# UNITED STATES BANKRUPTCY COURT
## FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| In the Matter of: | : | |
| | : | **Chapter 7** |
| **RICHARD MURRAY,** | : | |
| | : | **Case No. 16-10548-BFK** |
| Debtor. | : | |

## OBJECTION TO MOTION TO
## CONVERT CASE TO CHAPTER 13

COMES NOW Janet M. Meiburger, Trustee, by counsel, and files this objection to the Debtor's motion to convert this case to a case under Chapter 13 of the Bankruptcy Code, and does state as follows in support of such objection:

1.        This case is before this Court pursuant to a voluntary petition filed under Chapter 7 of the Bankruptcy Code by the Debtor Richard Murray ("Debtor" or "Murray") on or about February 18, 2016. Thereafter, Klinette H. Kindred was appointed as the interim Chapter 7 trustee.

2.        Effective January 24, 2017, Ms. Kindred resigned and Janet M. Meiburger was appointed as Chapter 7 Trustee ("Trustee") and continues to serve in that capacity.

3.        After over one year having passed in the administration of the Chapter 7 estate, the Debtor has now filed a motion seeking to convert this Chapter 7 case to a proceeding under Chapter 13 of the Bankruptcy Code pursuant to 11 U.S.C. 706(a). Your Trustee states and avers that the Debtor's motion should be denied due to demonstrable bad faith of the Debtor and because the

Kevin M. O'Donnell
HENRY & O'DONNELL, P.C.
Counsel to Janet M. Meiburger, Trustee
300 N. Washington Street, Suite 204
Alexandria, VA 22314
(703) 548-2100 *telephone*
(703) 548-2105 *facsimile*
kmo@henrylaw.com

Debtor does not qualify as a Chapter 13 Debtor as otherwise required pursuant to 11 U.S.C. 706(d). The factual support for the Trustee's objection is set forth hereinbelow.

### I.   BAD FAITH OF THE DEBTOR

4.   The Debtor has filed his motion to convert solely to avoid actions of the Trustee herein to i) avoid fraudulent pre-petition transfers of property of the Debtor, ii) recover and obtain turnover of property of the estate wrongfully withheld from the Trustee by the Debtor, and iii) seek a denial of discharge of the Debtor pursuant to 11 U.S.C. 727(a)(2) and (4) for transferring and concealing property of the estate and for making a false oath or account in connection with this case.

5.   To address the issues listed hereinabove, the Trustee has filed and is currently prosecuting two adversary proceedings against the Debtor. The facts giving rise to the adversary proceedings establish both pre-petition and post-petition bad faith on the part of the Debtor which are sufficient to warrant a denial of the Debtor's motion to convert. The factual underpinnings of the two adversary proceedings are addressed hereinbelow.

### a.   The §§542 and 727 Complaint

6.   The Trustee filed a Complaint against the Debtor on or about September 14, 2016 herein in the matter of Meiburger, Trustee v. Murray, Adv. Proc. #16-01183-BFK (the "727 Complaint")[1] seeking both a denial of the Debtor's discharge and the turnover of property of the estate improperly withheld by the Debtor.

7.   Prior to filing the 727 Complaint, the Trustee had determined that at the time of the filing of his petition herein, the Debtor had not less than Forty-Three Thousand Five Hundred Ninety-Four and no/100 Dollars ($43,594.00) that was then on deposit in the Murray, Cronogue &

---

[1] All adversary proceedings were initially filed in the name of "Klinette Kindred, Trustee v. Richard Murray" but

Werfel, PLC Trust Account (the "Trust Account") maintained at Burke & Herbert Bank by the

Debtor's law firm and that such monies that were fully earned and payable to the Debtor on or before

the petition date herein.

8.      Notwithstanding that the funds held in the Trust Account for the Debtor's law firm

were fully earned and payable to the Debtor as of the petition date herein, the Debtor failed entirely

to disclose the existence of such funds, making no reference to them in either the schedules or

statement of financial affairs filed by the Debtor in connection with his Chapter 7 filing. Under

questioning directed to him at the Sec. 341 meeting held in this case, the Debtor acknowledged the

existence of the funds held in the Trust Account, and further acknowledged that he was entitled to

payment of such funds.

9.      Subsequent to the Sec. 341 meeting, the Trustee acted by and through counsel to

make demand upon the Debtor that he segregate and sequester the subject funds in the Trust Account

while the Trustee investigated the nature of the Debtor's entitlement to such funds. On May 5, 2016,

counsel to the Trustee sent a letter to Debtor's counsel requesting documentation pertaining to the

rights and interests in the subject funds, and directing that the funds should not be spent or dissipated

in any way until the Trustee had completed her review. A copy of the May 5, 2016 letter is attached

hereto as Exhibit A.

10.     Upon review of bank records and client billing statements provided by the Debtor, the

Trustee determined that the $43,594.00 held in the Trust Account as of the petition date were then

fully earned by the Debtor and represented property of the estate. Accordingly, on June 24, 2016, the

Trustee acted by and through her counsel to send a letter to Debtor's counsel demanding the

---

are amended herein to reflect the current identity of the successor Chapter 7 Trustee.

immediate turnover of the $43,594.00 in funds held in the Trust Account as of the petition date. A copy of the June 24, 2016 letter is attached hereto as Exhibit B.

11.     Notwithstanding the demand of the Trustee, the Debtor has failed to turnover any portion of the above referenced funds which represent property of this estate. Upon information and belief, the Debtor has spent, transferred or otherwise disposed of the funds in violation of the Bankruptcy Code and in direct contravention of the demands and instructions of the Trustee made herein.

12.     After making several unsuccessful demands for turnover of the funds held in the Trust Account, the Trustee filed the 727 Complaint as referenced hereinabove seeking both a turnover of funds and a denial of the Debtor's discharge for making a false oath or account in connection with this case and for making an improper use or transfer of property of the estate after the filing of this case.

b.     **The §544 Complaint**

13.     In addition to the 727 Complaint, the Trustee additionally filed a Complaint against the Debtor on or about May 4, 2016 in the matter of <u>Meiburger, Trustee v. Murray</u>, Adv. Proc. #16-01074-BFK (the "544 Complaint") seeking to recover a transfer of real property made from the Debtor to the Debtor and his wife as tenants by the entirety (the "544 Complaint"). The 544 Complaint utilizes the Trustee's strong arm powers to assert claims avoiding the subject transfer under sections 55-80 and 55-81 of the Virginia Code.

14.     As alleged in the 544 Complaint, the transfer sought to be avoided by the Trustee is a 2013 transfer of real property located at 1727 Dogwood Drive, Alexandria, Virginia (the "Property") originally titled in the Debtor's sole name, and transferred in 2013 to the Debtor and his wife as

tenants by the entirety.

15.    At the time of the Debtor's transfer of the Property, he was knowingly engaging in actions that constituted a breach of fiduciary duties in respect of the Debtor's obligations as an estate fiduciary in the probate estate of Marjorie Levitan then being administered in Fairfax County, Virginia (the "Levitan Estate"). In short, the Debtor was then paying himself excessive fiduciary commissions that were over four times the amounts permissible under published fee schedules approved by the Fairfax County Commissioner of Accounts and the Commonwealth of Virginia.[2]

16.    Additionally, during 2013 and 2014 while the Debtor was making payment of excessive fiduciary commissions to himself, he was failing to make required interim and annual payment of taxes associated with such income, and was incurring tax liabilities that he was unable to pay.

17.    The Debtor's transfer of the Property was made to himself and his wife jointly as tenants by the entirety, and was made pursuant to a Deed of Gift upon the consideration of "love and affection and no monetary consideration." A copy of the June 27, 2013 Deed of Gift is attached hereto as Exhibit C.

18.    The transfer of the Property was made despite the fact that the Debtor and his wife entered into a Premarital Agreement dated August 24, 2008 ("Premarital Agreement") under which the Property was reserved for all purposes as the Debtor's sole and individual property and was provided to remain so throughout the duration of the parties' marriage. A copy of the Premarital Agreement and applicable schedules is attached hereto as Exhibit D.

---

2  Beneficiaries and the successor fiduciary of the Levitan Estate have separately filed Complaints before this Court seeking a determination of non-dischargeability of debts owed by the Debtor arising out of claimed breaches of the Debtor's fiduciary duties as executor of the Levitan Estate. See, Wintermeyer v. Murray, Adv. Proc. #16-010760-

19.     At the time of the 2013 transfer, the Property was the Debtor's sole asset of material

value. After transfer of the Property, the Debtor's remaining assets were of insufficient value to

provide for payment of liabilities incurred by the Debtor.

20.     The transfer of the Property made by the Debtor was made with intent to delay, hinder

or defraud creditors by placing the Property beyond the reach of the Debtor's individual creditors.

Additionally, the transfer was made for inadequate consideration and effectively rendered the Debtor

insolvent upon completion of the Transfer. The transparent purpose was to place the Property beyond

the reach of the Debtor's individual creditors.

## II. <u>ARGUMENT</u>

21.     The Debtor is seeking to now convert this Chapter 7 case to a case under Chapter 13

of the Bankruptcy Code pursuant to the provisions of 11 U.S.C. 706. The pertinent provisions of

§706 which apply to this matter provide as follows:

> (a) The debtor may convert a case under this chapter to a case under chapter
> 11, 12, or 13 of this title at any time, if the case has not been converted under
> section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a
> case under this subsection is unenforceable.

> (d) Notwithstanding any other provision of this section, a case may not be
> converted to a case under another chapter of this title unless the debtor may be
> a debtor under such chapter.

11 U.S.C.§ 706(a) & (d).

22.     The U.S. Supreme Court has previously held that in order to qualify as a Chapter

13 debtor, a person must pass muster under the definitional provisions of 11 U.S.C. 109(e) *and*

be free of any "cause" that would otherwise justify dismissal or conversion of a Chapter 13 case

pursuant to 11 U.S.C. 1307(c). See, <u>Marrama v. Citizens Bank of Massachusetts</u>, 549 U.S. 365,

368, 127 S. Ct. 1105, 1108, 166 L. Ed. 2d 956 (2007). In Marrama, the Supreme Court held that

a debtor may be denied the right to convert from Chapter 7 to a case under Chapter 13 if cause

exists to otherwise justify a dismissal or conversion of that Chapter 13 proceeding under the

theory that the Debtor cannot therefore qualify to be a debtor under Chapter 13 as otherwise

required by §706(d). Marrama at 373-374 stating that "[I]n practical effect, a ruling that an

individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of

prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7

proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under

Chapter 13." Id.

23.      In this case, there is demonstrable bad faith on the part of the Debtor both prior to

and subsequent to the petition date. As noted above, the Debtor engaged in a transfer of his

principal asset in such a manner as to place the Property beyond the reach of the Debtor's

individual creditors. This transfer was made for no other consideration other than "love and

affection," rendered the Debtor effectively insolvent upon completion of the transfer, and was

made with intent to delay, hinder or defraud creditors. More importantly, the Debtor blatantly

failed to identify in his bankruptcy schedules over Forty-Three Thousand and no/100 Dollars in

cash on deposit to which the Debtor was fully entitled as of the petition date. The property was

not identified on either of the Debtor's bankruptcy schedules *or* the Statement of Financial

Affairs. Finally, in complete disregard of the Trustee's instructions and demands, the Debtor has

personally removed and used the over $43,000.00 in funds for his own benefit.

24.      In Marrama, the Supreme Court stated that:

> Nothing in the text of either § 706 or § 1307(c) (or the legislative history of
> either provision) limits the authority of the court to take appropriate action in
> response to fraudulent conduct by the atypical litigant who has demonstrated
> that he is not entitled to the relief available to the typical debtor. On the
> contrary, the broad authority granted to bankruptcy judges to take any action
> that is necessary or appropriate "to prevent an abuse of process" described in §
> 105(a) of the Code, is surely adequate to authorize an immediate denial of a
> motion to convert filed under § 706 in lieu of a conversion order that merely
> postpones the allowance of equivalent relief and may provide a debtor with an
> opportunity to take action prejudicial to creditors.

Marrama at 374–375.

25.    Under Marrama, this Court has authority to deny the Debtor's motion to convert

to a Chapter 13 where the existence of bad faith would mandate a further dismissal or conversion

under §1307(c). Courts in this jurisdiction have also applied the bad faith test to deny a debtor's

right to dismiss a Chapter 13 proceeding. See, In re Mitrano, 472 B.R. 706 (E.D. Va.

2012)(stating that "[T]his Court agrees with those courts holding that the right to dismissal upon

request under § 1307(b) is limited to good-faith debtors."). The actions and omissions of the

Debtor in this case amply demonstrate a pattern of bad faith sufficient to warrant denial of the

Debtor's motion to convert.

26.    In analyzing the application of Marrama, one court has stated and observed as

follows:

> Other courts, following *Marrama,* have not allowed conversion from Chapter 7
> to Chapter 13 where debtors made prepetition fraudulent transfers, improperly
> represented their financial situation on their schedules, and moved to convert
> their case due to the litigation filed by the trustee.

In re Goines, 397 B.R. 26, 33–34 (Bankr. M.D.N.C. 2007) citing In re Piccoli, 2007 WL 2822001

(E.D.Pa. Sept. 27, 2007) and In re Truong, 2007 WL 708874 (Bankr.D.N.J. Mar. 5, 2007). These

are the very facts present in this case. They provide a more than adequate basis to deny the

Debtor's motion as filed herein. The filing of the motion to convert is a transparent attempt to avoid the Trustee's litigation and the consequences of the Debtor's own actions taken in connection with this case.

### III. <u>CONCLUSION</u>

WHEREFORE, your Trustee prays that this Honorable Court deny the Debtor's motion to convert this case to a proceeding under Chapter 13 of the Bankruptcy Code, and that the Trustee have such other and further relief as this Court may deem just.

**JANET M. MEIBURGER, TRUSTEE**
**By Counsel**

 /s/ Kevin M. O'Donnell
Kevin M. O'Donnell, VSB #30086
HENRY & O'DONNELL, P.C.
300 N. Washington Street
Suite 204
Alexandria, VA 22314
(703) 548-2100 *telephone*
(703) 548-2105 *facsimile*
kmo@henrylaw.com
Counsel to Janet M. Meiburger, Trustee

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing document was served on this 10th day of March, 2017, via the ecf system to counsel to the Debtor and the U.S. Trustee.


   /s/ Kevin M. O'Donnell
**Kevin M. O'Donnell**

# EXHIBIT A



HENRY&
O'DONNELL
A Professional Corporation

Kevin M. O'Donnell
E-mail: kmo@henrylaw.com

May 5, 2016

John J. O'Donnell, Jr.
601 King Street
Alexandria, VA 22314

BY ELECTRONIC MAIL TO
jjolaw@aol.com

RE: Richard Murray
Chapter 7 #16-10548-BFK

Dear Jack,

As you are aware, my firm has been retained by Klinette Kindred, Chapter 7 Trustee in the above referenced Chapter 7 case. As counsel to the Trustee, I have been requested to conduct an examination into the nature of funds held as of the petition date in the Trust Account of the Debtor's law firm of Murray, Cronogue & Werfel, PLC. Specifically, the Trustee requires information to determine whether these funds were earned fees of Mr. Murray subject to identification on schedules and administration by this estate.

The information provided by your client prior to the 341 meeting held in this case included a copy of the February, 2016 bank statement for the Murray, Cronogue & Werfel, PLC Trust Account #47102690. The balance as of the petition date appears to have been $43,594.00 after accounting for small withdrawals made on the day of filing and on February 19, 2016. I have requested a copy of the 341 meeting transcript, but the Trustee recalls your client stating during the 341 meeting that these funds "belonged to him" and that he intended to use them to pay his taxes.

Please note that to the extent the funds held in the law firm's Trust Account were earned fees payable to Mr. Murray, they are assets of this estate and may not be spent or dissipated without consent of the Trustee or order of the Court. Please be sure that your client understands that any improper use or disposition of estate assets would necessitate the Trustee's filing of adversary proceedings to recover funds and to deny discharge of the Debtor.

I must request that your client provide prompt information and documentary support sufficient to identify the nature of the funds held in the Trust Account. Specifically, and without limitation, I would ask that your client produce the following:

1. Copies of bank statements for the Trust Account for the period of January 1, 2015 through the date of filing.
2. Copies of any and all sub-ledger accounts identifying the source of funds currently held in the Trust Account. Specifically, I require information sufficient to identify the client file to which any funds relate.
3. With respect to any client identified with respect to item #2 above, a copy of every retainer agreement, and copies of initial complaint or pleadings, as well as any final orders or judgments entered with respect to each such client file.
4. A written explanation sufficient to identify the legal and beneficial owner of all funds on hand in the Trust Account as of the petition date as well as any additional documents that are relevant to this identification.

Jack, I would like to get this information by the end of next week so we can resolve this issue promptly. I believe the Court will order production of all of the information requested herein pursuant to a Rule 2004 examination should that become necessary. I am hopeful we can agree to a voluntary production of information from which the Trustee can make determinations and we can resolve the issue of entitlement to existing funds.

Please call me with any questions. Thanks for your attention to this matter.

Sincerely,

Kevin M. O'Donnell

cc: Klinette Kindred, Trustee

# EXHIBIT B



Kevin M. O'Donnell
E-mail: kmo@henrylaw.com

June 24, 2016

John J. O'Donnell, Jr.
601 King Street
Alexandria, VA 22314

BY ELECTRONIC MAIL TO
jjolaw@aol.com

RE: Richard Murray
Chapter 7 #16-10548-BFK

Dear Jack,

As you know, my firm represents Klinette Kindred, Chapter 7 Trustee in the above referenced Chapter 7 case. Pursuant to our representation, I requested and received from you certain account statements from the Debtor's professional escrow account in order to vet the ownership of funds held on hand as of the petition date in this case. Based upon the information provided by you and the Debtor's testimony at the Sec. 341 hearing, it is clear that the funds held on hand in the Murray, Cronogue & Werfel, PLC Trust Account #47102690 in the amount of $43,594.00 as of the petition date are property of the Debtor, and therefore, property of the bankruptcy estate.

On behalf of the Trustee, I must make immediate demand for the following:

1.  Mr. Murray immediately turn over the sum of $43,594.00 to the Trustee.
2.  All bankruptcy schedules be amended to properly disclose the existence of this property interest.

I must note that I have previously advised you of the Trustee's potential claim to these funds and specifically cautioned you to advise the Debtor *not* to diminish or otherwise use any portion of the funds. Any withdrawal or use of such funds must be immediately replaced so that the entirety of the amounts set forth above may be turned over to the Trustee as property of this estate.

I must ask that you secure turnover of funds to the Trustee not later than next Wednesday, June 29, 2016. Failing the Debtor's full cooperation and compliance with this

---

300 North Washington St.    |    Suite 204    |    Alexandria, Virginia  22314
TEL. 703-548-2100    |    FAX 703-548-2105    |    www.HenryLaw.com

demand, we will be forced to take action to enforce and compel and turnover, as well as to address a potential challenge to the Debtor's discharge. Please contact me immediately if there are any questions or problems with this request.

Sincerely,

Kevin M. O'Donnell

cc: Klinette Kindred, Trustee

# EXHIBIT C

130015491

000346

| Prepared by & return to: | Scott B. Weaver, PLC<br>510 King Street, Suite 511<br>Alexandria, Virginia 22314 |
| --- | --- |
| Grantee's Address: | 1727 Dogwood Drive<br>Alexandria, Virginia 22302 |
| Account Number: | 50582460 |
| Tax Exempt: | VA Code Section 58.1-811D |

## DEED OF GIFT

THIS DEED OF GIFT, is made as of the 27th day of June, 2013, by and between Richard MURRAY, married (the "Grantor"), and Richard MURRAY and Joyce A. D'AVANZO, husband and wife, (the "Grantees").

### WITNESSETH:

That for love and affection and no monetary consideration, the Grantor does hereby grant and convey, with General Warranty and English Covenants of Title, unto the said Grantees, as tenants by the entirety with the right of survivorship as at common law, all right title and interest of the Grantor in and to the following described property, located in City of Alexandria, Virginia (the "Property"):

Lot 506, GLEN DEVON, a resubdivision of Lots 237 to 259, both inclusive, "OAK-CREST" Subdivision, as the same is duly dedicated, platted and recorded by Deed of Resubdivision recorded in Deed Book 1242, at Page 1630 and amended by First Amendment to Deed of Resubdivision recorded in Deed Book 1253, at Page 1622, among the land records of the City of Alexandria, Virginia.

AND BEING the same Property conveyed to Grantor by Deed dated June 9, 1989, and recorded in Deed Book 1273 at Page 933, among the land records of the City of Alexandria, Virginia.

This conveyance is made subject to easements, conditions, and restrictions of record insofar as they may lawfully affect the property.

WITNESS, the following signature and seal:

1

000347

_____ (SEAL)
Richard MURRAY

STATE OF VIRGINIA,
CITY OF ALEXANDRIA, to-wit:

    The foregoing instrument was acknowledged before me this
27th day of June, 2013, by Richard MURRAY.

    My commission expires: 2-28-2015

                        _____
                        Notary Public

                    INSTRUMENT #130015491
            RECORDED IN THE CLERK'S OFFICE OF
                        ALEXANDRIA ON
                JUNE 27, 2013 AT 01:56PM

                EDWARD SEMONIAN, CLERK
                RECORDED BY: JAH

2

# EXHIBIT D

# PREMARITAL AGREEMENT

THIS PREMARITAL AGREEMENT ("Agreement") is made this ___21st___ day of

August, 2008, by and between Joyce D'Avanzo, prospective wife (hereafter referred to as

"Joyce"), and Richard Murray, prospective husband (hereafter referred to as "Richard").

## RECITALS

A.      The parties plan to marry in the near future and after execution of this Agreement.

B.      Each party currently owns separate property all of which has been acquired

independently of and without the assistance of the other.

C.      Joyce is employed with Robert Allen as a Fabric Designer and Richard is self-employed

as an attorney with the firm of Pompan, Murray and Werfel, PLC.  Both parties are current

residents and domiciliaries of the City of Alexandria, Virginia.

D.      Each party has been married previously and each has children from his or her prior

marriage.

E.      The parties desire to establish their respective rights in all property currently owned or

hereafter acquired by each of them in the event of a separation, annulment, divorce or the death

of either party. (Hereafter any reference to "divorce" shall also include "annulment"). The parties

intend that each of them shall have the right to retain all property which each may now have or

may acquire in the future except as expressly set forth in this Agreement.

F.      The parties, both self-supporting, further desire to waive any rights or claims to support

from the other in the event of a separation or divorce.  Both parties are capable of providing for

their own support through employment and through other means and neither intend to be

dependent on the other for support in the future.



G.    This Agreement is not intended to facilitate or encourage a separation or divorce. The parties have entered into this Agreement in recognition of their present ages and circumstances with the sincere hope their marriage will be successful.

H.    Each party understands that in the absence of this Agreement the law would confer upon him or her property rights and interests in certain of the present and future property possessed or acquired by the other, and each party further understands that those rights and interests will be affected by this Agreement.

I.    Both parties are entering into this marriage without the expectation of acquiring a share of the assets or income, and any increases or additions thereto, of the other party to the marriage except for the provisions hereinafter specified and it is the intention of both parties to retain their Separate Property (as defined herein) for and as their own exclusive use and ownership.

J.    Richard acknowledges and represents that he has been informed by his independent counsel, to the extent he desires, as to the legal rights and claims that he would have in the absence of this Agreement in, to and against the property of Joyce during the existence of the marriage, and in the event of an annulment, legal separation, divorce or death; and Joyce further acknowledges and represents that she has been informed by her independent counsel, to the extent she desires, as to the legal rights and claims that she would have in the absence of this Agreement in, to and against the property of Richard during the existence of the marriage, and in the event of an annulment, legal separation, divorce or death.

K.    The parties acknowledge that this Agreement is a premarital agreement as defined by law. Each party understands and intends that the provisions of this Agreement shall prevail over any statute or law of the District of Columbia, Virginia, Maryland, or any other jurisdiction, including any foreign jurisdiction, which may be applicable in the absence of this premarital



contract, that this Agreement shall govern their rights and obligations upon dissolution of their marriage by death, separation or divorce regardless of where they may be living at the time.

L.    The parties each acknowledge that they have read the Agreement fully, they understand it and they assent to its terms.

**IN CONSIDERATION** of these premises, the contemplated legally binding marriage between the parties, the mutual promises and covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, for and on behalf of themselves, and each of them, and their respective heirs, personal representatives, successors and assigns, do hereby covenant, promise and agree as follows:

**DEFINITIONS**

1.    **Property**. "Property" means any interest, present or future, legal or equitable, vested or contingent, in any property, including real property, tangible personal property, intangible personal property, and mixed property, whenever and wherever acquired or located. "Real property" means land, together with improvements and fixtures thereon. "Tangible personal property" means movable tangible assets, such as, but not limited to, furniture, furnishings, clothing, jewelry, art, automobiles, and equipment. "Intangible personal property" means incorporeal assets, such as, but not limited to, cash, certificates of deposit, negotiable instruments such as checks, notes and mortgages, accounts receivable, insurance, annuities, copyrights, patents, licenses, royalties, and other forms of intellectual property, and securities such as stock, bonds, units and options, and where any such property is held in a bank, brokerage or other financial institution account, the account itself.



2.    **Retirement Benefits**. "Retirement benefits" means any individual retirement account or annuity, pension plan, profit-sharing plan, thrift savings plan, or other deferred compensation benefit or plan, qualified or non-qualified, provided through employment or self-employment, without regard to whether the terms of the benefit or plan may permit a party to receive benefits prior to actual cessation of employment.

3.    **Earnings**. "Earnings" means salary, wages, bonuses, origination fees, commissions, employee prizes and awards, accrued but unpaid compensation, severance pay, workers' compensation, unemployment compensation, disability payments, social security benefits, veteran's benefits, retirement benefits, and other deferred compensation, the value of employee perquisites, including, but mot limited to, paid leave, health, life and disability insurance benefits, severance pay, company provide vehicle or transportation allowances, expense accounts and allowances, the right to retain earned airline frequent flyer miles, and other remuneration derived from personal efforts or employment.

4.    **Income**. "Income" means but is not limited to, dividends, interest, royalties, capital gains, rents, business profits, distributions (other than distribution of principal) from estates, trusts, pass-through entities such as partnerships and "S" corporations, and other property in which a party has an interest.

5.    **Marital Property**. Except as the parties may otherwise later agree in writing and as otherwise provided herein, "marital property" of the parties shall be, and is limited to:  (i) all untitled property acquired during the marriage except for untitled property directly and clearly traceable to separate property; (ii) any funds or investments held in any joint accounts established by the parties at any financial institution, including, but not limited to bank accounts, credit unions, and brokerages, during their marriage; (iii) all jointly titled property held as tenants



by the entireties or joint tenants with right of survivorship; (iv) all contest winnings, prizes and

awards derived from an investment of marital property; (v) any appreciation in the value of

marital property; (vi) all income from marital property; (vii) all proceeds, whether in cash or in

kind from the sale or exchange of marital property; (viii) all proceeds of a loan secured by a lien

on the marital property; (ix) all property acquired with the proceeds from the sale of, or in

exchange for, marital property or with the proceeds of a loan secured by a lien on marital

property.

6.    **Separate Property**. Except as the parties may otherwise later agree in writing

and as otherwise provided herein, a party's "separate property" shall be any and all property not

defined as marital property under Paragraph 5 including, but not limited to:  (i) Richard's entire

interest in the firm of Pompan, Murray and Werfel, PLC, including but not limited to all income

derived therefrom, and all capital, equipment and liabilities thereof, which shall remain

Richard's sole and separate property for all purposes; (ii) all property acquired by a party prior to

the parties' marriage, including, specifically, the property set forth in Richard's Schedule A,

attached, and Joyce's Schedule B, attached, and further including, also without limitation, (iii) all

property listed on any updates of Schedules A and B as Richard and Joyce's separate property, as

provided in Paragraph 36; (iv) all property titled in the party's name, including, to the extent

expressly provided in the title or other instrument creating the interest, a party's ownership share

of any property titled as tenants in common in accordance with such title or other instrument; (v)

the party's earnings; (vi) any property acquired by the party after the date of this Agreement by

gift, including inter-spousal transfers of separate property or marital property from one party to

the other party, survivorship, operation of law, under the laws of intestate succession, a will,

trust, or similar instrument, or beneficiary designation; (vii) any appreciation in the value of the



party's separate property; (viii) all income from the party's separate property; (ix) all money or

other property received by a party in satisfaction of a judgment for injury to his or her person or

pursuant to an agreement for the settlement or compromise of a claim for such injury; (x) all

contest winnings, prizes and awards based on the party's skill or knowledge or otherwise derived

from the party's separate property; (xi) all proceeds whether in cash or in kind, from the sale,

conversion, consolidation, merger, or exchange of the party's separate property; (xii) all proceeds

of a loan secured by a lien on the party's separate property; (xiii) all property acquired with the

proceeds from the sale or conversion of, or in exchange for, the party's separate property or with

the proceeds from the sale or conversion of, or in exchange for, the party's separate property or

with the proceeds of a loan secured by a lien on the party's separate property; (xiv) all untitled

property acquired solely with a party's separate property; (xv) that portion of a untitled property

clearly and directly traceable to a party's separate property.

6A.    **Special Provision for Marital Residence.**  The parties plan to make Richard's

property located at 1727 Dogwood Drive their marital residence (listed in Richard's Schedule

A).  If the parties divorce, the Dogwood Drive property shall be treated as Richard's Separate

Property (as defined herein in Paragraph 6) for all purposes.  Notwithstanding the designation of

the Dogwood Drive property as Richard's Separate Property, if the parties remain married and

Richard predeceases Joyce, then Joyce shall have the option to remain in the Dogwood Drive

property, rent free, for up to one (1) year following Richard's death.  During any such time Joyce

remains in the Dogwood Drive property pursuant to this Paragraph, she shall be responsible for

all repairs, maintenance and upkeep on the property.  Richard's estate shall pay to Joyce within

one (1) year of Richard's death an amount equal to the appreciation in the Dogwood Drive

property, if any, to be defined as the difference between the fair market value of the property on



the date of Richard's death, and the appraised value on the Effective Date (as defined herein) of

this Agreement, set forth in the appraisal attached as "Exhibit C". Nothing contained herein is

intended to transmute the character of the Dogwood Drive property from Richard's separate

property to marital property, nor is it intended to restrict any of Richard's rights regarding the

Dogwood Drive property pursuant to Paragraph 7 herein.

## OWNERSHIP AND CONTROL OF PROPERTY DURING MARRIAGE

7.      **Control Over Separate Property.** Each party is free to sell, use, transfer,

exchange, abandon, lease, consume, assign, create a security interest in, encumber, dispose of,

pledge, gift or otherwise manage and control his or her separate property.

8.      **Control Over Marital Property.**

a.      Each party agrees to fully disclose all material facts and information

regarding the existence, title, and valuation of all marital property and to provide the other party

with access to all information, records, and books that pertain to the nature and value of such

property upon his or her request.

b.      If a judgment lien, tax lien, or other encumbrance of one party is placed

upon a party's interest in jointly titled, real or personal property, the party who incurred the lien

or encumbrance shall indemnify and hold the other party harmless from any financial losses

incurred by such other party as a result thereof.

9.      **Ownership of Property.** Except as the parties may otherwise later agree in

writing, each party shall be deemed to have an equal interest in all marital property without

regard to the monetary or non-monetary contributions made toward the acquisition, care,

appreciation in value, or maintenance of such property by either party. Except as the parties may

otherwise later agree in writing, all separate property of a party shall be deemed owned by such



party notwithstanding the fact that such party expended time, skill and effort in the management

or maintenance of such separate property and, further, notwithstanding the fact that the other

party may have made monetary or non-monetary contributions to the acquisition, care,

appreciation in value, or maintenance of such property.

10.    **Fiduciary Duties**. In the event a party is appointed personal representative,

executor or other fiduciary of the other party's estate, in the event of the disability of a party, and

in the further event the other party is appointed and serves as a conservator or guardian of the

disabled party, the party so appointed shall nevertheless be bound by, and shall comply with, the

terms of this Agreement.

## DISPOSITION OF RETIREMENT AND SURVIVOR BENEFITS
## IN THE EVENT OF SEPARATION, DIVORCE OR DEATH

11.    **Waiver of Interest in Retirement Benefits Upon Separation or Divorce**.  In

the event of the parties' separation or divorce, each party shall retain his or her retirement

benefits accrued before the marriage free from any claim or demand of the other party, including

any claim for equitable distribution, monetary award, or other disposition of property upon

divorce, and each party expressly waives any and all claims he or she may have to any premarital

retirement benefits held by the other party, including, but not limited to, lump sum withdrawal

benefits, refunds of employee contributions, or commuted lump sum withdrawal benefits,

refunds of employee contribution, or commuted lump sums, survivor benefits, including optional

survivor benefits, annuities, or any benefits of any kind payable under the terms of a party's

retirement plan. The waiver described herein extends to any passive increase in value of the

premarital shares of each party's retirement benefits during the marriage, but it does not apply to

the retirement benefits either party may accrue during the marriage. In the event of a divorce,



each party will be entitled to one-half the marital share of and all retirement, benefits of the other party which are earned during the marriage.

12.     **Spousal Interest in and Right to Survivor and Death Benefits**. In the event of a separation or divorce, each party will be entitled to participate as a payee or beneficiary of any interest the other party may have in any survivor and/or death benefits which the participant party has elected, including, but not limited to, the right to receive any lump sum death benefit, joint and survivor annuity, or pre-retirement survivor annuity, but the party's share of any such survivor or death benefit shall be limited to the same percentage amount of the retirement benefits he or she receives pursuant to Paragraph 11 herein.  Nothing herein will require either party to elect a survivor benefit if such an election is not required by his or her retirement plan, and if such an election is not made, then the other spouse has no entitlement to any such benefit. Each party consents to any election previously or hereafter made by the other party with respect to the form of payment of any benefit upon retirement or death under any such plan including a single life annuity, lump sum withdrawal benefit, commuted lump sum, or refund of employee contributions, or any other form of payment available under the terms of his or her retirement plan. The spouse who receives any such survivor benefit will be responsible for paying all costs, fees, and taxes associated with his or her share of the survivor benefit.

13.     **Ratification of Waivers**. The parties acknowledge that as of the date of this Agreement the Retirement Equity Act of 1984 does not permit a premarital waiver of a spouse's rights to a survivor or death benefit payable with respect to a qualified retirement plan notwithstanding the provisions of Paragraph 12.  The parties agree that after the date of their marriage each will, upon request of the other, execute any waiver or consent to waiver as may be required by the terms of the other party's plan, or applicable statute or regulation, so as to permit



the plan participant to elect any form of payment available under his or her retirement plan and to waive the recipient spouse's rights to receive any portion of the premarital retirement benefits and/or survivor benefits of the other party.

14.    **Default**. If, notwithstanding Paragraphs 11 through 13, a non-participant party fails or refuses to timely execute a waiver or consent to a waiver after being requested to do so, in addition to any other remedies to which the participant may be entitled, the participant spouse shall have a creditor's claim against the non-waiving or non-consenting party in an amount equal to the value of the spousal benefit not waived.

15.    **Voluntary Beneficiary Designations**. Notwithstanding Paragraphs 11 through 13, nothing in this Agreement shall prevent either party from designating the other party as beneficiary of his or her survivor benefits, pre-retirement survivor benefits or death benefits. Neither party waives any right to proceeds vesting in him or her by reason of being designated a beneficiary of any retirement benefits of the other party.

## WAIVER OF SPOUSAL SUPPORT

16.    **Waiver of Spousal Support**. Each party expressly waives any right he or she may ever have to receive alimony, maintenance, or spousal support from the other, including temporary, rehabilitative t indefinite and permanent, both periodic and lump sum, whether such right or claim results from common law, statutory law, or by way of equitable rights. Each party shall indemnify and hold the other harmless from any such claim made by him or her. Each party waives his or her right to have any court assume jurisdiction for the purpose of modifying this Agreement and no provision in this Agreement concerning alimony or spousal support shall be subject to modification by any court under any statute or law of any jurisdiction, including a foreign jurisdiction, which may be applicable in the absence of this premarital contract. Each



party recognizes the implications of waiving a future right to support from the other party given

the uncertainty of each party's future needs and resources, but makes such waiver freely and

voluntarily. Each party acknowledges that it is not his or her intent to derive any right of support

from the other party as a result of the marriage relationship, notwithstanding the law of any state,

the passage of time or any change in the circumstances of the parties.

### DISPOSITION OF PROPERTY ON SEPARATION OR DIVORCE

17.    **Disposition of Separate Property upon Separation and/or Divorce**.  In the

event of the parties' separation or divorce, each party's separate property (as defined herein)

shall be disposed of as provided in this Paragraph.

a.    Each party shall retain his or her separate property free from any claim or

demand of the other party, notwithstanding the fact that such party may have expended time,

skill and effort in the management or maintenance of such separate property and, further

notwithstanding the fact that the other party may have made monetary or non-monetary

contributions to the acquisition, care, appreciation in value and/or maintenance of such property.

b.    No separate property of a party may be the subject of a claim for

contribution, transfer, monetary award, equitable distribution award, equitable lien, or

community property award under Virginia Code §20-107.3 or any other jurisdiction which may

govern the disposition of marital or community property upon separation or divorce, including a

foreign jurisdiction, as such laws now exist or may hereafter be enacted or amended, and each

party waives his or her right to make any such claim with respect to the separate property of the

other party as defined in this Agreement.



18.    **Disposition of Marital Property Upon Separation and/or Divorce.** In the event of the parties' separation or divorce, the parties' marital property shall be disposed of as provided in this Paragraph.

a.    In the event of the parties' separation and/or divorce, each party shall receive one-half of the new value of all marital property owned by the parties as of the date of separation and/or divorce, free from any claim or demand of the other party, without regard to the relative monetary or non-monetary contributions of either party to the acquisition, care and maintenance of such property.

b.    No marital property shall be subject to any claim for contribution, transfer, monetary award, equitable distribution award, equitable lien or community property award under D.C. Code §16-910, Code of Virginia §20-107.3, Maryland Code FL §8-201, *et seq.*, or division of any kind under any applicable statute of law of the District of Columbia, Virginia, Maryland, or any other jurisdiction which may govern the disposition of marital or community property upon separation or divorce, including a foreign jurisdiction, as such laws now exist or may hereafter be enacted or amended, and each party waives his or her right to make any such claim with respect to the parties marital property as defined in this Agreement, except as expressly set forth herein.

c.    In order to effect the division of marital property, the parties shall take such steps as they shall mutually agree upon to divide and allocate their marital property in accordance with the terms of this Agreement. The division of property may be partly in cash and partly in kind, pro rata or non-pro rata, and the parties may sell any asset and divide the proceeds.



d.      In the event the parties do not agree as to the value of any specific item of

marital property, the parties shall obtain an appraisal of the property subject to division from a

qualified, independent appraiser with experience in valuing the particular item-of property being

valued. Such appraisal shall control as to value. If the parties are unable to agree on an appraiser,

each party shall select an appraiser and the average of the two appraisals shall control as to value.

A party's failure to respond within thirty (30) days to a written request for selection of an

appraiser shall be deemed a waiver of the right to participate in the selection and the other

party's choice of appraiser shall control.

e.      In the event the parties do not agree as to the appropriate disposition of

any item of marital property, they shall offer such item for sale to the general public using a

method calculated to achieve the highest price and shall divide the net sales proceeds equally.

f.      In determining net value of any asset for purposes of this section,

outstanding liens or charges against the asset shall be taken into account.

## PROPERTY RIGHTS UPON DEATH OF A PARTY

19.   **Property Rights Determined in Accordance with this Agreement**.  Upon death

of a party, the property owned by such party shall be determined in accordance with this

Agreement. The decedent's property shall include his or her separate property and his or her one-

half share of marital property.

20.   **Waiver of Rights**. Each party releases and discharges the other party and his or

her successors-in-interest from any and all rights, claims and obligations arising out of or by

virtue of the marriage of the parties, including but not limited to, dower, courtesy, right of

election regarding the estate of the other or to renounce and take against the will of the other,

interest in augmented estate, right to inheritance in the event of intestacy, family allowance,

homestead rights, exempt property, and all other similar or related rights under applicable law, including the law of any state or foreign jurisdiction where the deceased spouse may be domiciled at death, and further including any rights resulting from changes in law which may take effect after execution of this Agreement. This paragraph applies to all property owned by each party at the time of the marriage or later acquired.

21.    **Voluntary Bequests**. Nothing in this Agreement shall constitute a waiver or disclaimer of any right or property interest passing to a party under the other party's will or a trust established by the other party, passing to either party by right of survivorship under a deed or contract held jointly with the other party, or passing to a party under a beneficiary designation.

Neither party waives any bequest under the will of the other party or the right to serve (and

receive compensation for serving) as personal representative, attorney-in-fact, or trustee if

appointed as such under any valid instrument. Each party confirms his or her intention that any

funds which he or she deposits in any joint account of the parties which is subject to a

survivorship, pay-on-death, or similar provision, shall become the property of the survivor of

them. This Paragraph is not, and shall not be construed as, a promise or representation that either

party intends to transfer any real or personal property to the other.

22.     **Voluntary Beneficiary Designations.** Nothing in this Agreement shall prevent

either party from designating the other party or any other person as beneficiary of his or her life

insurance benefits.  Neither party waives any right to proceeds vesting in him or her by reason of

being expressly designated a beneficiary of any life insurance on the life of the other party.

Notwithstanding the forgoing, the parties acknowledge that Richard is the owner of a level term

life insurance policy with the American Automobile Association (AAA) in the face amount of

One Hundred Thousand Dollars ($100,000.00).  Richard agrees to maintain said policy during

Page 14 of 24

his lifetime naming Joyce as the sole beneficiary.  Both parties agree that in the event of a

separation, annulment, or divorce Richard has the sole option to remove Joyce as a beneficiary

under the policy.

     23.    **Separate Liability for Separate Debts**.  At all times during the marriage, except

as the parties may otherwise agree, each party shall be solely responsible for all debts in his or

her name alone, whether incurred prior to or during the marriage.  Except for charges on joint

credit cards or lines of credit, or credit cards or lines of credit in one party's name on which the

other party is an authorized user, nether party shall contract any debt on the credit of the other.

     24.    **Secured Debt**.

       a.    Each party shall be solely responsible for paying any debt secured by his

or her separate property.

       b.    Except as the parties may otherwise agree, each party shall be responsible

for paying one-half of any debt incurred by them jointly that is secured by marital property.

     25.    **Unsecured Joint Debts**.  Except as the parties may otherwise agree, any

unsecured joint debts of the parties shall be allocated as set forth below:

       a.    In the event of a separation, annulment or divorce, the parties shall

allocate their unsecured joint debt as part of the equal division of marital property such that each

party receives one-half of the new value of all such marital property in accordance with

Paragraph 18.

       b.    Upon the death of a party, the estate of the deceased party and the

surviving spouse shall each be equally liable for any unsecured debts incurred by the parties

jointly.



c.      Unless the parties otherwise mutually agree in writing, if either party pays more than his or her one-half share of any unsecured joint debt, the other party shall, promptly upon the written request of the payor, reimburse the payor for the advance on his or her behalf.

## LEGAL FEES AND ENFORCEMENT COSTS

26.     **Fees and Costs for Preparing Agreement**. Each party shall pay his or her own legal fees and expenses incurred in connection with the negotiation and preparation of this Agreement.

27.     **Fees and Costs Relating to Separation and Divorce**. Each party shall be solely responsible for any legal fees or costs incurred by him or her in connection with any separation or suit for divorce, and, except as otherwise provided in Paragraph 28, each party waives and releases the other from any claim for any such legal fees and costs associated with any future separation or divorce action, including, but not limited to, fees and costs awarded during the pendency of such action and fees and costs which may be awarded at or after the conclusion of such action.

28.     **Enforcement Costs**. Any legal fees or costs incurred by a party in the successful enforcement of any of the provisions of this Agreement, whether through litigation, negotiations, or other actions necessary to compel compliance herewith, shall be paid by the defaulting party. Any such costs incurred by a party in the successful defense of any enforcement action shall be paid by the party seeking to enforce compliance. If a party seeks to have this Agreement or any provision of this Agreement declared invalid and fails to establish such invalidity, the party who makes such claim of invalidity shall pay the legal fees and costs incurred by the other party to defend against such claim.



## VOLUNTARY EXECUTION AND DISCLOSURES

29.    **Voluntary Execution**. Each party acknowledges that he or she is entering into

this Agreement freely and voluntarily.  Richard is represented by Sean P. Schmergel, Esquire of

the firm of Schmergel and Mersberger, PLC.  Joyce is unrepresented, though by her initials at the

foot of this Paragraph and her signature below, she hereby acknowledges that she has been

advised to obtain her own counsel to review and advise her regarding all aspects of this

Agreement.  Each party has been informed of, or has had the opportunity to be informed of, his

or her legal rights, including his or her rights to support, equitable distribution, dower, courtesy

and augmented estate rights, to renounce and take against the will of the other, and all other

rights arising out of the marriage and all of the provisions of this Agreement to the extent he or

she has deemed necessary to decide whether to sign this Agreement.  All questions pertinent to

such provisions have been fully and satisfactorily explained to each of them to the extent each

party deemed necessary.  Each party acknowledges that he or she has not received any legal

advice from counsel for the other party; that neither is relying on any purported advice from

counsel for the other party, except to the extent that either party has been advised to obtain his or

her own independent counsel.  Each party has fully considered the implications of entering into

this Agreement and each understands that this is intended as a final expression of the property

and support rights of each of them with respect to the other. Each party further acknowledges

that this Agreement is fair and that it is not unconscionable.

_____                              _____
Richard                                              Joyce

30.    **Financial Disclosures**. Each party has been informed of the financial status of the

other party as of the date of this Agreement. Prior to executing this Agreement, each party

provided the other party with a substantially accurate disclosure of his or her property and financial obligations. Richard's disclosure of assets and debts is set forth on attached Schedule A. Joyce's disclosure of assets and debts is set forth on attached Schedule B. Each party is satisfied with the disclosures made by the other party, including those shown on the attached schedules, and any disclosure omitted by either party is deemed waived by the other party. The parties acknowledge that some of the values shown on Schedules A and B are estimates and a subsequent determination that one or more of such estimates is inaccurate shall not render all or any part of the Agreement invalid. Further, the parties acknowledge that some assets may have been omitted. Both parties affirmatively state that they are nevertheless satisfied with the disclosures made and that coupled with their pre-existing knowledge of each other's financial circumstances, they believe they have sufficient information on which to base a determination to enter into this Agreement. The parties have each been advised that they have the right to request additional financial information or documents and they waive the right to make any such further requests. Each further affirmatively states that it is his and her express intent that this Agreement be valid and enforceable based on such disclosures as have been made.

## TAXES

31.    **Income Taxes and Income Tax Returns**. Each party shall be separately and solely liable for any income taxes payable with respect to his or her income. The parties acknowledge that neither party is obligated to file a joint income tax return and they agree that they shall decide from year to year whether to file joint income tax returns.

32.    **Filing Joint Return Not Transmutation**. The parties agree that the filing of joint income tax return shall not in any fashion be construed as a transmutation of separate property



Page 18 of 24

into marital property nor shall such returns be deemed evidence of an attempt by either party to

acquire an ownership interest in the other party's separate property.

### ADDITIONAL PROVISIONS REGARDING CHARACTER OF PROPERTY

33.     **Proof of Character of Property.** A party claiming that an item of untitled

tangible personal property acquired during the parties' marriage is his or her separate property

has the burden of proving the same by clear and convincing evidence.  In the absence of

sufficient proof, such asset shall be marital property.  For purposes of this Paragraph, sufficient

proof shall include but shall not be limited to: (i) a written acknowledgment by one party that an

asset is wholly or partly the separate property of the other party; or (ii) a bill of sale, invoice, or

similar document coupled with proof of the source of funds used for payment.

34.     **Additional Agreements on Character of Property.** This Agreement contains

rules governing the characterization of property as a party's separate property or as marital

property.  The parties at any time may override the characterization of any real or personal

property as herein provided by executing a writing which clearly identifies the property and

states how the property or interest in property is to be characterized for purposes of this

Agreement. The writing may also address to what extent, if any, future contributions to equity or

commingling will affect the characterization of the property. Any such writing must be signed by

each party or his or her legal representative (if permitted by the terms of the governing

instrument or statute creating the agency).

35.     **Partition of Marital Property.**  Nothing in this Agreement shall be construed to

preclude the parties from partitioning their marital property into separate property. To effect a

partition, the parties shall execute a partition agreement. Any such agreement must identify the

assets to be partitioned and must be signed by each party or his or her legal representative (if

Page 19 of 24



permitted by the terms of the governing instrument or statute creating the agency) and must

identify which assets shall remain separate property and which assets shall be partitioned into

marital property.

36.    **Updates of Schedules A and B**. The parties may periodically update Schedules A

and B of this Agreement to include separate property of each party acquired after the date of

marriage. Any such updates shall be signed and dated by each party. Such updates shall satisfy

the "writing" requirements under Paragraph 34; provided, however, that nothing herein is

intended to make compliance with Paragraphs 34 or this paragraph the exclusive means by which

a party may establish the separate or marital character of property.

## MISCELLANEOUS PROVISIONS

37.    **Complete Agreement**. The parties intend this Agreement to set forth their present

understanding in its entirety. There are no written or oral promises between them which they

presently wish to exchange but have excluded from this contract. The parties are not relying

upon any representations other than those expressly set forth herein.  Except as otherwise

expressly provided herein, no modification or waiver of any of the terms of this Agreement shall

be valid unless in writing and executed with the same formality as this Agreement.

38.    **Separation and Divorce**. The parties shall be considered "separated" for

purposes of this Agreement as of the date that the parties are no longer living under the same

roof with the intent on the part of at least one party to terminate the marital relationship, or if

earlier, as of the date that one party informs the other party in writing that he or she intends to be

separated and to terminate the marital relationship.

39.    **Special Power of Attorney**. Following the parties' marriage, each party shall, at

the request of the other party, execute a special and limited power of attorney authorizing the



other party to execute any contracts for sale, deeds, or other similar instruments so as to permit

such party to freely convey and otherwise freely control his or her separate property, as defined

herein, as if such party was unmarried.

40.    **Furnishing Other Instruments to Effect Agreement**. Each party shall take any

and all steps necessary to timely execute, acknowledge and deliver any and all further

instruments and assurances to the other party that the other party reasonably requires to

implement the provisions of this Agreement.

41.    **Prior Agreements and Claims**. The parties acknowledge and agree that they

have not previously entered into any other contract, understanding or agreement, express or

implied, with respect to each other's property or earnings, wherever or however acquired, or with

respect to the support or maintenance of each other. Neither party now has, possesses, or claims

any right or interest whatsoever, in law or in equity, under the laws of any state, in the present or

future property, income or estate of the other, or a right to support and maintenance or

rehabilitation payments of any kind whatsoever from the other by reason of the parties' non-

marital relationship.

42.    **Casual Use of Terms Does not Create Property Interest**. The parties

acknowledge that they may occasionally use such expressions as "our property," etc., when

referring to property that is, by the terms of this Agreement, separate property. Notwithstanding

such casual references, they acknowledge that this Agreement may be altered or amended only in

writing as set forth in this Agreement.

43.    **Breach of Contract Provisions**. No waiver of a breach or default of any

provision of this Agreement shall be deemed to constitute a waiver of any subsequent breach or

default of any provision herein. The failure of either party at any time to insist upon the strict



performance of any provision herein shall not be deemed a waiver of the right to insist upon strict performance of the same or any other provision at a later time.

44.     **Severability**. If any provision of this Agreement shall for any reason become invalid or otherwise cannot be enforced, the remainder of this Agreement shall remain in full force and effect, unless an injustice would otherwise result.

45.     **Effect of Agreement on Separation or Divorce**. This Agreement may, upon advice of counsel, be presented to the appropriate court to be affirmed, ratified, and incorporated, but not merged, in any judgment of legal separation or divorce, limited or final, between the parties. The parties understand that an additional agreement or decree addressing property and assets acquired during their marriage may be required; however, the parties' rights to such property shall be determined only in accordance with the terms of this Agreement.

46.     **Effective Date of Agreement**. This Agreement shall become effective upon the parties' marriage.  If the parties do not marry this Agreement shall be void and of no further effect.

47.     **Survival After Separation and Reconciliation**. This Agreement shall remain in full force and effect unless expressly revoked in writing by the parties.  Further this Agreement shall remain in effect regardless of any separation followed by reconciliation.

48.     **Governing Law**. The validity, enforceability and interpretation of this Agreement shall be determined and governed by the laws of the Commonwealth of Virginia regardless of the location of any property that may be owned by either party and regardless of where the parties may be living.



49.     **Provisions Binding**. All of the provisions of this Agreement shall be binding upon and inure to the benefit of the parties, their agents, attorneys in fact, legal representatives, and successors-in-interest.

50.     **Multiple Originals**. This Agreement may be executed in any number of counterparts, anyone of which shall be deemed to be the original.

51.     **Recitals Incorporated**. The Recitals set forth above are incorporated by reference as part of this Agreement.

IN WITNESS WHEREOF, the parties hereto set their hands and seals the day and year first above written.

_____ (SEAL)
RICHARD MURRAY

CITY OF ALEXANDRIA
COMMONWEALTH OF VIRGINIA:

I hereby certify that on this _21_ day of _August_, 2008, before me, the subscriber, a notary public in and for the aforesaid jurisdiction, personally appeared RICHARD MURRAY, known to me, and he acknowledged the foregoing agreement to be his act and he made oath in due form of law that the facts stated therein are true to the best of his knowledge.

Witness my hand and notarial seal.

_____
NOTARY PUBLIC

My commission expires: _8/31/09_

Andrea Vitorino
Notary Public
Commonwealth of Virginia
My Comm. Exp. 8/31/09
Notary #357739

_____ (SEAL)
JOYCE D'AVANZO

CITY OF ALEXANDRIA
COMMONWEALTH OF VIRGINIA:

    I hereby certify that on this __21__ day of __August__ , 2008, before me, the

subscriber, a notary public in and for the aforesaid jurisdiction, personally appeared JOYCE

D'AVANZO, known to me, and she acknowledged the foregoing agreement to be her act and

she made oath in due form of law that the facts stated therein are true to the best of her

knowledge.

    Witness my hand and notarial seal.

_____
NOTARY PUBLIC

My commission expires: __8/31/09__

Andrea Vitorino
Notary Public
Commonwealth of Virginia
Comm. Exp. 8/31/09
Notary #357739

## SCHEDULE A to Premarital Agreement of August 21, 2008
## Richard Murray's schedule

| Income | Amount Value |
|---|---|
| Salary – Expected, current year | $200,000 |
| Salary – 2007 | $175,000 |
| Salary – 2006 | $233,000 |
| Expected bonus, raise, or other change in salary over next 3 years | None |
| Dividends | None |
| Interest | None |
| Capital Gains | None |
| Rental Income | None |
| Distributions from Family Trust | None |
| Other expected changes in income over the next 3 years | None |
| | |
| | |
| **Gifts** | |
| Annual gift from parents/grandparents | None |
| **Real Estate** | $620,000 |
| Primary Residence Assessed Value 2008 | |
| Vacation home | |
| **Motor Vehicles** | $25,000 |
| | |
| **Furniture, Artwork, Antiques, Jewelry** | |
| | |
| | |
| | |
| **Cash on Deposit** | $20,000 |
| | |
| | |
| **Retirement Benefits, IRAs, Deferred Compensation** | |
| Individual Retirement Accounts | $40,000 |
| | |
| | |
| **Securities – Nonretirement** | |
| | |
| | |
| **Business Interests** | Law Practice $200,000 |
| | |
| | |
| **Life Insurance** | Term Policy AAA $100,000 |
| | |
| | |
| **Interest in Trusts/Estates** | |
| | |
| | |
| | |

Page 1 of 2



### SCHEDULE A to Premarital Agreement of August 21, 2008
### Richard Murray's schedule

| Expected Changes in Assets Next 3 Years | None Expected |
|---|---|
| | |
| | Car Loan $10,000 |
| Debts | Revolving Credit Line $20,000 |
| | First Mortgage $180,000 |
| | Second Mortgage (Home Equity Line) $100,000 |
| | |
| | |

## SCHEDULE B to Premarital Agreement of August 21, 2008

## Joyce D'Avanzo's schedule

| Income | Amount Value |
|---|---|
| Salary – Expected, current year | $35,000 |
| Salary – 2007 | $35,000 |
| Salary – 2006 | $30,000 |
| Expected bonus, raise, or other change in salary over next 3 years | None |
| Dividends | None |
| Interest | None |
| Capital Gains | None |
| Rental Income | None |
| Distributions from Family Trust | None |
| Other expected changes in income over the next 3 years | None |
| Social Security | $1,400 per month |
| | |
| **Gifts** | |
| Annual gift from parents/grandparents | None |
| **Real Estate** | **$400,000** |
| Primary Residence Assessed Value 2008 | $379,000 |
| Vacation home | None |
| **Motor Vehicles** | **$5,000** |
| | |
| **Furniture, Artwork, Antiques, Jewelry** | **$30,000** |
| | |
| | |
| | |
| **Cash on Deposit** | **$2,500** |
| | |
| | |
| **Retirement Benefits, IRAs, Deferred Compensation** | **$50,000/none** |
| Individual Retirement Accounts | See above |
| | |
| | |
| **Securities – Nonretirement** | **None** |
| | |
| | |
| | |
| **Business Interests** | **None** |
| | |
| | |
| **Life Insurance** | **None** |
| | |
| | |
| **Interest in Trusts/Estates** | **None** |
| | |
| | |
| | |

Page 1 of 2



SCHEDULE B to Premarital Agreement of August 21, 2008

Joyce D'Avanzo's schedule

| Expected Changes in Assets Next 3 Years | None |
| --- | --- |
| | |
| | |
| Debts | Mortgage $200,000 |
| | Credit Card $1,500 monthly |
| | |
| | |
| | |